Rev. 3/19

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON

Luis Alfonso León #44559-013

*Plaintiff's full name and prisoner number*

Plaintiff,

v.

See Attached

*Defendant's/defendants' full name(s)*

Defendant(s).

(If you cannot fit all of the defendants' names in the space provided, please write "see attached" in the space above and attach additional sheets of paper, as necessary, with the full list of names. The names listed here must be identical to those in Section II. Do not include addresses here. **Individuals whose names are not included in this section will not be considered defendants in this action.**)

Case No. 2:22-cv-00851-BHS-TLF

(leave blank – for court staff only)

### PRISONER CIVIL RIGHTS COMPLAINT

Jury Demand?
□ Yes
□ No

FILED
LODGED
RECEIVED

MAIL

JUN 1 6 2022

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

### WARNINGS

1. Do not use this form if you are challenging the validity of your criminal conviction or your criminal sentence. If you are challenging your conviction or sentence, or if you are seeking restoration of good-time credits that would shorten your sentence, you must file a Petition for Writ of Habeas Corpus. If you use this form to challenge your conviction or sentence, you risk having your claim dismissed. Separate forms are available for filing a habeas petition.

2. Under the Prison Litigation Reform Act ("PLRA"), you are required to exhaust all remedies in your institution's grievance system that are available to you before filing suit. This generally means that you must file a grievance and, if it is denied, appeal it through all available levels of review. Your case may be dismissed if you fail to exhaust administrative remedies, unless the administrative grievance process was not "available" to you within the meaning of the PLRA. You are not required to plead or show that you have exhausted your claim in this complaint.

Page 1 of 9

Defendants' full Names

Prison Official Elledge

Prison Official J. Manansala

Prison Official Harriss

Chaplain Sheikh

Food Service

Food Service Management

Counselor Smith

~~Warden of SEATAC Federal Facility at detention Center~~

SEATAC Federal Detention Center

State of Washington

I. Jacquez, Warden at SEATAC Federal Detention Center

Counselor Craig

3.      Please review your complaint carefully before filing.  If your case is dismissed, it may affect your ability to file future civil actions while incarcerated without prepaying the full filing fee.  Under the PLRA, a prisoner who has had three or more civil actions or appeals dismissed as frivolous, malicious, or for failure to state a claim cannot file a new action without first paying the full filing fee, unless the prisoner is in imminent danger of serious bodily injury.

4.      Under Federal Rule of Civil Procedure 5.2, papers filed with the court, including exhibits or attachments to a complaint, may not contain certain information, which must be modified as follows:

<table>
<tr><td>Do not include:</td><td>Instead, use:</td></tr>
<tr><td>• a full social security number</td><td>→ the last four digits</td></tr>
<tr><td>• a full birth date</td><td>→ the birth year</td></tr>
<tr><td>• the full name of a minor</td><td>→ the minor's initials</td></tr>
<tr><td>• a complete financial account number</td><td>→ the last four digits</td></tr>
</table>

5.      You may, but do not need to, send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.  Any documents you submit *must relate directly to the claims you raise in this lawsuit*.  They will become part of the court record and *will not be returned to you*.

## I.      PLAINTIFF INFORMATION

León, Luis, A.
Name (Last, First, MI)                                              Aliases/Former Names

44559-013
Prisoner ID #

SEATAC Federal Detention Center
Place of Detention

P. O. Box 13900
Institutional Address

King, Seattle            Washington            98198
County, City             State                Zip Code

*Indicate your status:*

☐  Pretrial detainee                    ☐  Convicted and sentenced state prisoner
☐  Civilly committed detainee           ☒  Convicted and sentenced federal prisoner
☐  Immigration detainee

## II.    DEFENDANT INFORMATION

*Please list the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint. Make sure that the defendant(s) listed below are identical to those contained in the caption on the first page of the complaint. Attach additional sheets of paper as necessary.*

Defendant 1:    Elledge, Prison Official
                Name (Last, First)

                Corrections Officer
                Current Job Title

                P.O. Box 13900
                Current Work Address

                King, Seattle          Washington          98198
                County, City           State               Zip Code

Defendant 2:    J. Manansala, Prison Official
                Name (Last, First)

                Corrections officer
                Current Job Title

                P.O. Box 13900
                Current Work Address

                King, Seattle          Washington          98198
                County, City           State               Zip Code

Defendant 3:    Harriss, Prison Official
                Name (Last, First)

                Corrections officer
                Current Job Title

                P.O. Box 13900
                Current Work Address

                King, Seattle          Washington          98198
                County, City           State               Zip Code

Page 3 of 9

Page ½

Section II  Attachment (1)
Defendant 4: Chaplain Sheikh
          SEATAC Chaplain
          P.O. Box 13900
          King County, Seattle, Washington  98198

Defendant 5: Food Service
          Food Service Provider
          P.O. Box 13900
          King County, Seattle, Washington 98198

Defendant 6: Food Service Manager
          Food Service Manager (name unknown)
          P.O. Box 13900
          King County, Seattle, Washington 98198

Defendant 7: Counselor Smith
          SEATAC Counselor
          P.O. Box 13900
          King County, Seattle, Washington 98198

Defendant 8: SEATAC Federal Detention Center
          SEATAC Federal Detention Center facility
          P.O. Box 13900
          King County, Seattle, Washington 98198

Defendant 9: State of Washington
          State of Washington, U.S.A.
          Washington, U.S.A.

Page 2/2

Section II  Attachment (2)
Defendant 10: I. Jaquez
          Warden of SEATAC FDC
          P.O. Box 13900
          King County, Seattle, Washington 98198

Defendant 11: Counselor Craig
          Counselor of SEATAC FDC
          P.O. Box 13900
          King County, Seattle, Washington 98198

### III.    STATEMENT OF CLAIM(S)

*In this section, you must explain what you believe each defendant did to violate your civil rights, and if you know, identify the federal statutory or constitutional right you believe was violated.*

*If you believe the defendant(s) violated your civil rights in more than one way, explain each violation under a different count.  For example, if you believe you received constitutionally inadequate medical care and your religious rights were substantially burdened, include one claim under "Count I" (i.e., medical) and the other claim under "Count II" (i.e., religion).*

*Number your paragraphs.  For example, in Count I, paragraphs should be numbered 1.1, 1.2, 1.3, etc., and in Count II, paragraphs should be numbered 2.1, 2.2, 2.3, etc.  The first two paragraphs of each Count have been numbered for you.*

*If you have more than three counts, attach additional pages and follow the same format for each count.*

*If you attach documents to support the facts of your claim(s), you <u>must</u> specify which portion of the document(s) (i.e., page and paragraph) you are relying on to support the specific fact(s) of your claim(s).  <u>If you do not specify the portion of the supporting document(s), the Court may disregard your document(s)</u>.*

## <u>COUNT I</u>

*Identify the first right you believe was violated and by whom:*

1.1 Prison Official Elledge of EA Unit violated my First Amendment ~~rights~~ rights. So did every person on the defendant list.

*State the <u>facts</u> of your first claim below.  Include all the facts you consider important.  Be specific about dates, times, locations, and the names of the people involved.  Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong.  If you need additional space, you may attach extra sheets.*

1.2 I told Prison Official Elledge to please help me get my religious flesh-free diet and I informed him that my religious Flesh-free diet was federally recognized even though it may be considered legally "non-mainstream." I said I did not want to file a lawsuit and that,

as a settlement, I simply want to be fed my religious flesh-free diet, as is my right as a federal inmate. Officer Elledge laughed and then in a serious tone said, "I'm going to give you an opportunity to sue," as if to entice me into suing him and this SEATAC facility. Any officer officer with a simple search of laws pertaining to religious flesh-free diets would realize that this sort of diet needs to be given, as a right, in order to avoid violating the First Amendment. Since he refused to help or even look into the matter I am suing him for violating my First Amendment right to eat my religious flesh-free diet, as it is also protected by the RLUIPA.

1.3 Jones V. Gallahan says that Prison Officials "must provide a prisoner in Isolation with a diet containing a minimum caloric requirement that will not be rejected on religious grounds." The court noted that this requirement may be met by providing acceptable food alternatives. This was not done for six days. I did not eat for six days due to receiving trays of food with flesh which I "rejected on religious grounds." I am a Vaishnava by religion and we follow the "No killing" regulative principle which includes no meat eating.

*State with specificity the underline{injury, harm, or damages} you believe you suffered as a result of the events you described above in Count I. Continue to number your paragraphs.*

1.4 I was unable to practice my religion's strict diet of no flesh eating. I was unable to properly offer any food for six days. I starved for six days. I felt weak, dizzy, experienced constant diarrhea, stomach pain, nausea and embarrassment of being laughed at by staff.

Section III Statement of Claims (Attachment) (Count 1)
1.4 (Continued) What I mean by offering food is what
the Bhagavad-gītā states in Chapter 9 text 26. It
clearly says what I should offer, "If one offers Me
with love and devotion a leaf, a flower, fruit or water,
I will accept it. A.C. Bhaktivedanta Swami Prabhupada
explains in the purport of the same text says, "One who
loves Krishna (God) will give Him whatever He wants, and
he avoids offering anything which is undesirable or unasked
for." Also, according to Bhagavad-gītā in Chapter 3
text 13 it says why should not eat food which is not
offered to God, "The devotees of the Lord are released from
all kinds of sins because they eat food which is
offered first for sacrifice. Others, who prepare food for
personal sense enjoyment, verily eat only sin." A.C.
Bhaktivedanta Swami Prabhupada explains this same text
in the purport, "The santas (sanskrit for devotees of the
Lord), being always in compact of love with the Supreme
Personality of Godhead, Govinda (the giver of all pleasures),
or Mukunda (the giver of liberation), or krsna (the all-
attractive Person), cannot accept anything without first
offering it to the Supreme Person." Srila Prabhupada,
my subtle Spiritual Master puts it this way when he
explains to not eat animals (no flesh), "The Vedic (Vaishnava)

Section III. Statement of Claims (Attachment) (count 1)
1.4 (Continued) ~~xxxx~~ injunction is, "māhiṁsyat sarva-
bhūtāni" never commit violence to anyone. Nor does
understanding that the living entity is not killed encourage
animal slaughter. Killing the body of anyone (including
animals) without authority is abominable and is ~~xxxxx~~
punishable by the law of the state as well as by the
law of the Lord." Therefore my religion, which a very
large portion of the world follows, clearly defines
nonviolence and the type of diet which Vaishnavas
are supposed to follow. When I was being offered
flesh from animal slaughter I had but two choices,
A.) Change my religious believes or,
B.) Starve.
This was a heavy burden on my religious beliefs to
bare.
1.5 2000.cc-1 applies in this case where (a)
General Rule. "No government shall impose a substantial burden
on the religious exercise of a person residing in or confined
to an institution, as defined in section 2 of the Civil Rights
of Institutionalized Persons Act (42 U.S.C. 1997), even
if the burden results from a rule of general applicability,
unless the goverment demonstrates that imposition of the
burden on that person —

Section III Statement of Claims (Attachment) (Count 1)

1.5 (continued) (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive... As far (b) goes this facility receives federal financial assistance as (b)(1) states. My 42 U.S.C.S. § 2000cc-1 (a) were violated and the application of scope for (b)(1).

1.6 Kroger v. Bryan, 523 F.3d 789, 70 Fed. R. Serv. 3d (Callaghan) 532, falls squarely with my claim. Where the prison officials rendered my "religious exercise effectively impracticable; and "prison officials failed to meet their burden that they were employing the least restrictive means of furthering compelling ~~governmental~~ governmental interests."

1.7 In my religion we are supposed to chant "Hare Krishna Hare Krishna, Krishna Krishna, Hare Hare — Hare Rama Hare Rama, Rama Rama, Hare Hare," precisely 108 times, 16 times a day. That's 1,728 verses a day. That is very difficult to do without prayer beads. The catholics and Buddhists get prayer beads but when I asked for my prayer beads I was denied by Chaplain Sheikh. The Chaplains refusal to give me prayer beads imposed a "substantial burden" on my "ability to exercise" my "religion while" I "was confined in detention center as in Ortiz V. Downey, 561 F.3d 664, 2009 (7th Cir. 2009). Many times a day I lose count and it makes a practice

Section III Statement of Claims (Attachment)(Count 1)

1.7 (continued) of my religion go from 1 and a half hours to a 3 hour practice. It is an offense to lose count as stated by Srila Prabhupada. If it is a burden for Catholics to not get prayer beads then it should also be a burden for Vaishnava's not to get prayer beads.

1.8 McEachin v. McGuinnis, 357 F.3d 197, 2004 states that "Religious Land Use and Institutionalized Persons Act of 2000, statute that could present complex legal issues, Court found that it was advisable for inmate to have assistance of counsel..." and it is a case law I would like invoke this for me as well.

1.9 Prison official J. Manansala was neglectful of my health and ignorant to federal laws about religious Flesh-free diets. During my six days of starvation I asked him for help in getting a meal which was a "No flesh" meal. He said, "there's nothing I can do." I asked him to please get me a superior, someone who could in fact help if he was unable to. No help ever came. According to Jones v. Gallahan, as previously mentioned, he was in fact responsible for helping me get a religious no-flesh diet "that will not be rejected on religious grounds." I asked him to research

Section III statement of Claims (Attachment) (Count 1)
1.9 (continued) the law for a chance that he could see that it was my right to this diet promptly upon intake so that my right to practice my religion was free from burden as in 2000cc-1 and in order to mitigate this imminent legal situation, but he refused. On his next walk by my cell during my time in quarantine, in the same day, I asked J. Manansala, "Brother, please help me, I'm starving, don't you have any compassion?" With a stoic, emotionless face he said, "no," and continued on his way. He did not have any compassion towards my cause. His lack of understanding of simple prisoner's rights and the constitution caused me to continue to starve. He was part of the problem that I could not practice my religious beliefs and it's pertinent diet.

1.10 My First Amendment rights were violated ~~~~ by all of the defendants from April 7th to April 13th.

1.11 On the afternoon of the 10th of April or possibly the 11th of April, Prison Official Harriss stopped at my door. I was told he could help me by one of the inmate workers while they handed me a tray with flesh. When Harriss stopped at my cell door 41 in EA unit it was evident that he had heard about me and my religious no-flesh diet. This was confirmed because

Section III statement of Claims (Attachment)(count 1)

1.11 (continued) he told me, "Oh! You're that inmate with high standards," then proceeded to call me, "the door warrior," because I was fighting for my right to eat my sincerely held religious belief of abstaining from flesh and wanting something proper to ~~xxx~~ offer to Krishna (what I call God.) This is how federally funded employees as individuals and under the color of law are treating me, calling me names and laughing. Harriss was at my door laughing at my situation while I starved. I called him to my door to help me with the violation of my rights and to see ~~xxx~~ what I can do but instead he ended up violating them as well by not taking the matter seriously. I said, "if I'm a door warrior because I'm fighting for my rights, does that make you a tyrant?" He replied, "yes." Blunt and to the point. He just admitted to being an oppressor. These "high standards" Prison Official Harriss is speaking of are factually not just my standards but the standards the federal Government has put in place to protect people's rights and prisoner's rights as well. Prison Official Harriss' lack of understanding of prisoner's rights caused the continued violation of my First Amendment rights, specifically when

Section III statement of Claims (Attachment)(count 1)

1.11 (continued) it came to practicing my religion and it's pertinent diet.

1.12 Another fact is that a right is not earned but is factually an entitlement and just because I am a prisoner does not mean that I have no rights, nor does facility policy trump law. When an individual person, prison official or staff member blatantly disregards government statutes as I believe Elledge, J. Manansala, Harriss and other defendants did then there may ~~be~~ be an issue with the individual only. However, when several federally funded staff members conspire together and together show this sort of negligence to federal law and acts such as the RFRA and RLUIPA then there is a problem with staff and prison official training. The facility is then responsible because the prison officials and staff acted under the color of law and as individuals. In Haywood v. Drown it states, "the attempt to shield correctional officers from personal liability violated the Supremacy Clause." Therefore prison officials are not just liable under the color of law but are in fact liable themselves as individuals.

1.13 I also claim ~~or~~ or assert my claim under the RFRA because I'm a "sincere adherent" of the Vaishnava Faith.

Section III Statement of Claims (Attachment)(count 1)

1.14 I also assert my claims under the Free Exercise Clause of the First Amendment. I was deprived for 6 days of nutritionally adequate meals that conform to my sincere religious beliefs.

1.15 I asked for help from the Chaplain, Chaplain Sheikh, but he disregarded the severity of the situation. By the time I talked to him I had already experienced 3-4 days of hunger due to rejecting food on religious grounds. He told me that I would have to wait 2-3 more days for food service to approve my flesh-free diet. However, I should not have to have gone to the Chaplain or anyone else for help as my no-flesh diet was factually approved on August 19th, 2019 in Englewood FDC in Englewood, Colorado. It should never have taken almost a week of no eating for my diet to get "approved" because it has been approved since August 19th, 2019. I've attached evidence of this. Religion In Prison § 7.4.6 Restriction of Diet: "Food service provided inadequate nutrition and was handled under conditions so unsanitary as to violate the Eighth Amendment. The Chaplain has the authority only to authorize medical and religious diets." Therefore, Chaplain Sheikh, food service, food service management, and this

Section III statement of Claims (Attachment) (count 1)

1.15 (continued) facility are responsible for violating my First Amendment by continuing to give me trays with flesh for 6 days From April 7th to April 13th. The food lacked nutrition because the entire tray was rejected on religious grounds.

1.16 In regard to giving prisoners religious flesh-free diets the courts have noted, ~~as~~ as in Jones v. Gallahan, that, "this requirement may be met by providing acceptable food alternatives. Since this was not met then prison officials and staff that I asked for help in regards to my sincere religious no-flesh diet violated the RLUIPA and the RFRA.

1.17 Counselor Smith is also responsible for my delay because he informed me on May 7th that he throws away any grievances on "his officers." He said, "I'm just going to throw it away," in response to me asking him how I should formally write a grievance. I had written grievances before in regards to ~~Prison~~ Prison Officials Elledge, J. Manansala, and Harriss and now it all made sense why I received no response. My grievances were thrown out by Smith. Counselor Smith said that he is the one who reads all grievances on officers.

Section III Statement of Claims (Attachment)(Count 1)
1.17 (continued) J. Manansala once informed me that grievances are a constitutionally protected activity before the incident with Counselor Smith. J. Manansal was present when Counselor Smith said he violates anyone's Fifth Amendment Right to write a grievance on an officer and J. Manansala did nothing, he remained quiet. I told Smith that I wanted his name so that I can write a grievance on him and J. Manansala threatened me by saying if I don't leave I would go or that he would take me to the "hole", or Special Housing Unit, the SHU. Counselor Smith finally gave me his name and the situation de-escalated.
1.18 ~~~~~~~ The Defendants violated the Free Exercise Clause of the First Amendment, RLUIPA and the Due Process Clause of the Fourteenth Amendment by failing to give me an adequate religious no-flesh diet.
1.19 The Defendants violated the Petition Clause of the First Amendment by failing to adequately respond to grievances as they were thrown out as explained to me by Counselor Smith and enforced by J. Manansala.
1.20 The Defendants tried to force me to eat flesh. Officers would say, "Just eat it." It was eat flesh or starve

Section III Statement of Claims (Attachment)(count 1)

1.21 Just like in Farmer v. Brennan, "A defendant in a civil rights action must have personal involvement in the alleged wrongs." The Defendants in my case had deliberate indifference and subjectively were aware because they should know the law since they are enforcing it or otherwise seek out the answer to the dilemma of me starving. They ommited to search the law and in turn violated it. They deliberately did not help because they did not care about my health. The Defendants knew I was being ~~malnutritioned~~ malnutritioned and utter failed to reasonably respond to it.

1.22 The Government burdened my sincerely held religious beliefs and the Government also burdened my religious exercise of Chanting and eating a vegetarian diet. What greater restriction is there for my case where I am to choose between changing my sincerely held religious beliefs or starving? Anyone who comes in here to this specific facility, just like other facilities I have been in during my First Indictment and who have the same or similar religion and beliefs will be forced to change their beliefs or starve. This unecessary and heavy burden is due to ignorant staff and systemic issues integral with facility policy, and with the general population becoming more inclined

Section III statement of Claims (Attachment)(count 1)
1.22 (continued) to veganism and vegetarianism, fixing this issue should be a compelling interest and can be done by the least restrictive means by simply giving this sort of meals upon intake. There is a federal Statute that says this should be done but unfortunately I have failed to find it. I am asking for justice where injustice was served.

1.23 "Injustice anywhere is a threat to justice everywhere." Martin Luther King Jr.

1.24 These prison officials should be fired or disciplined. How can this facility condone criminal behavior? I am here as a "criminal" for a crime I committed in 2017. I am here eating with the permission of the Government. I am dependant on the Government's decision to eat. The Defendant's negligence caused pain on my person and everyone I asked for help neglected My very essential need to eat and practice my religion, thus violating the constitution. I was only asking for the constitutional minimum; to practice my religion and it's diet. What I was asking for not destructive to either regulations and procedurem to maintain good order, security, and discipline, consistent with consideration of costs and limited resources

Section III Statement of Claims (Attachment)(count 1)

1.24 (Continued) as put in Hartmann, 707 F.3d at 1124.

1.25 I hope ~~that~~ I properly stated my claim "that officials' refusal to provide appropriate diet substantially burdened" my exercise of religion, Similar to Cotton v. Cate 578 Fed. Appx. 712, 2014 (9th Cir. 2014)

1.26 "Inmate was entitled to seek nominal monetary damages in his 42 USCS § 2000cc-1(a) action against corrections officials in light of limiting language of 42 USCS § 1997(e). Smith v. Allen, 502 F.3d 1255, 21 Fla. L. Weekly Fed. C 54, 2007 U.S. App. (11th Cir. 2007), reh'g, en banc, denied, 277 Fed. Appx. 979, 2008 (11th Cir. 2008), abrogated in part, Sossamon v. Texas, 563 U.S. 277, 131 S. Ct. 1651, 179 L. Ed 2d 700, 22 Fla. L. Weekly Fed. S942 (2011), overruled in part, Hoever v. Marks, 993 F.3d 1353, 28 Fla. L. Weekly Fed. C 2665, 2021 (11th Cir. 2021)

1.27 SEATAC Federal Detention Center, the State of Washington and the Warden of this facility all working for the government. The facility, the State of Washington and Warden I. Jacquez are receiving federal funding or Federal employees being paid by Federal Funding. Since I asked

Section III Statement of Claims (Attachment)(Count 1)
1.27 C(ontinued) the Warden for help with resolving this matter and refused by ommitting to help me with a direct grievance on an officer concerning the violation of my rights then he is also responsible of violating the RFRA, RLUIPA and my First Amendment. The warden and other staff as defendants work in a facility that the state of Washington is supposed to be watching so the state is also responsible, because it also receives ~~their~~ funding from the federal government. As previously stated in Religion in Prison § 7.4.6 - Restriction of diet, "No Government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution... even if the burden results from a rule of general applicability..." Furtherance of a compelling governmental interest or the burden being the least restrictive means of furthering that interest, I believe, was not met.

1.28 The officers and staff at this facility, the facility itself and it's warden are all federally funded employees, representing the U.S. Federal Government. They are employed in King County, in the State of Washington and are therefore responsible for violating the afformentioned rights and Acts.

## COUNT II

*Identify the second right you believe was violated and by whom:*

2.1 My Eighth Amendment Rights were violated by every defendant on the defendant's list.

*State the facts of your second claim below. Include all the facts you consider important. Be specific about dates, times, locations, and the names of the people involved. Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong. If you need additional space, you may attach extra sheets.*

2.2 This will be a short one. Jones v. Gallahan states that "prison officials must a prisoner in isolation with a "diet containing a minimum cabric requirement that will not be rejected on religious grounds." The court noted that this requirement may be met by providing acceptable food alternatives." J. Manansala, Elledge, Harriss, Chaplain Sheikh, food service, food service manager, SEATAC federal Detention Center, Warden I, Jacquez, the state of Washington, all violated my Eighth Amendment protection from "Cruel and Unusual Punishment" by allowing me to starve for 6 days straight because no "acceptable food alternatives" were given to me. Instead I was literally told to suck it up and wait because I was a prisoner. Being a prisoner does not mean I lose my right to eat or practice my religion. All the defendant's negligence to my rights caused horrible stomach pains, dizziness, diarrhea, mental and physical anguish due to lack of ~~food and~~ flesh-free food and from laughing and ridicule from staff and prison officials for 6 DAYS.

2.3 Haywood v. Drown "Struck down a New York State legislative attempt to the jurisdiction from New York Courts to hear claims based on 42 U.S.C. § 1983. The attempt to shield correctional officers from personal liability violated the Supremacy Clause." I am suing the defendants as individuals and individuals working under the color of law.

*State with specificity the injury, harm, or damages you believe you suffered as a result of the events you described above in Count II. Continue to number your paragraphs.*

Horrific stomach pains, dizziness, diarrhea, mental and physical anguish due to lack of food and from verbal torment and ridicule and negligence from prison officials and staff. This occured from April 7th to April 13th.

## COUNT III

*Identify the third right you believe was violated and by whom:*

3.1 My Fifth Amendment Right to grievances on officers was violated by J. Manansala, Counselor Smith, and I. Jacquez (warden) ⁵
Also Counselor ~~Smith~~. Craig.

*State the facts of your third claim below. Include all the facts you consider important. Be specific about dates, times, locations, and the names of the people involved. Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong. If you need additional space, you may attach extra sheets.*

3.2 On the 24th of April J. Manansala read my legal mail I wrote to the Department of Justice, Civil rights division. He did not just scan it but in fact looked left to right.on each line, looked up and down thoroughly in this way to each page. I did not want him to do this because his name was on

there as one of the people I wanted to sue. Nonetheless, he read it in the way I described above.

3.3 On May 7th I spoke to Counselor Smith about writing a grievance on J. Manansala and Counselor Smith said, "I'M just going to throw it away." He explained to me that he throws away all grievances on officers. I explained that I am suing J. Manansala which is why I did not want him to read his name and Counselor Smith said, "No you're not." I further explained that I had already written a letter to the Department of Justice with J. Manansala's name in it and he said, "No you didn't." I am not paraphrasing, these were his words. So Counselor Smith Violates rights by throwing away grievances on officers and also throws away letters which are meant to sue such officers. McNamara v. Moody, "the courts held that censorship must be limited to concrete violations," not otherwise. I believe my grievances on officers have been thrown out and so was my letter to the Department of Justice.

*State with specificity the injury, harm, or damages you believe you suffered as a result of the events you described above in Count III. Continue to number your paragraphs.*

Delay in me fighting for my right to sue for the violation of constitutional rights and for violating my right to grievances protected under the Fifth Amendment.

Page 1/3

Section III Statement of Claims (Attachment)(count 3)

3.4 In Part I(1) Constitutional Rights of Prisoners, Prisoners' Rights to Use of the Mail, Internet and telephone. § 5.3 Communication With The Courts, it says, "The vast majority of the courts now recognize that a prisoner has the right to petition the courts concerning not only his or her conviction but also the constitutionality of the conditions of his or her confinement. Access to the courts is a fundamental right and "all other rights of a prisoner are illusory without it..."" It continues to say, "Mail from a court to a prisoner is "legal mail" entitled to constitutional-protection and may not be opened outside the presence of the prisoner..." then in § 5.4.1 Communication with Attorneys, Censorship of Communicating With Attorneys, it says, "Smith v. Robbins, another federal appellate decision, sought to give even more protection to prisoner-attorney correspondece than did Sostre. In Smith, the Warden was enjoined from reading the correspondence, and he could open such material to inspect for contraband only in the presence of the prisoner involved." Also, "that prison officials are permitted to open attorney correspondence in the presence of the prisoner to check for contraband but the Contents MAY NOT BE READ."

Page 2/3

Section III statement of Claims (Attachment) (count 3)

Finally, "Prisoners have a constitutionally protected right to have their properly marked attorney mail opened in their presence. However, a prisoner does not have the requisite actual injury required to overcome the prison Litigation Reform Act when he makes only a conclusory allegation that mail opening compromised his case and does not identify how any legal matters specifically were damaged."

3.5 J. Manansala read his name on the letter going to the Department of Justice. J. Mansala also read it's content. Counselor Smith admitted to throwing away all grievances and therefore I claim he also threw away my "legal mail" going to the department of Justice in an attempt to protect J. Manansala as he did with grievances towards officers. Where is the proof that letter was sent out?

3.6 Levier v. Woodson, "prevented State prison officials from stopping letters (complaining of prison conditions) to the State governor, attorney general and the attorney working for the State's pardon agency." This may also apply to grievances and letters to the Department of Justice.

Page 3/3

Section III Statement of Claims (Attachment)(Count 3)

3.7 Counselor Craig ~~Smith~~ opened my letter from Andy Kennedy, from the Public Defender's Office in Seattle, Washington. He did so out of my presence. The letter contained this 42 U.S.C. 1983. The letter was sent out with Friday the 20th of April's mail. I received it May 26th, 2022. I believe Counselor Smith and possibly others read it's content which caused a delay in me receiving it. Andy Kennedy found it strange that a letter would take this long for me to receive it considering the distance and his personal experience as a professional sending mail to his clients. The mail was marked, "SPECIAL MAIL – Open only in the presence of inmate."

3.8 I wrote a grievance to the warden about these issues. I have attached the proof with proper labels. I sent it out seeking help from prisoner right violations on May 7th, 2022 at 8:30 pm. Still to this date I have received no help from him as far as remedies are concerned. He is also responsible for violating my rights because he did not do anything even though it was clear my rights were being violated.

3.9 It's time for staff at this facility to stop acting with impunity and time for them to learn we are no longer living in the 1950's.

## IV.   RELIEF

*State exactly what you want the Court to do for you.  For example, you may be seeking money damages from an individual defendant, you may want the Court to order a defendant to do something or to stop doing something, or you may want both kinds of relief.  Make no legal arguments.  Cite no cases or statutes.*

I am seeking money damages, I am seeking review and change of facility policy in regards to flesh-free diets, I am seeking to fire all staff, I am seeking for better staff training and I am seeking an apology for what I went through from all pertinent staff. (correction - Fire all staff who violated my rights.)

## V.   SIGNATURE

*By signing this complaint, you represent to the Court that you believe the facts alleged to be true to the best of your knowledge, that you believe those facts show a violation of law, and that you are not filing this complaint to harass another person or for any other improper purpose.*

5-28-2022
Dated

Luis C. León
Plaintiff's Signature

 **Individualized Needs Plan - Initial Classification   (Inmate Copy)**   SEQUENCE: 02176618
Dept. of Justice / Federal Bureau of Prisons                          Team Date: 05-03-2022
Plan is for inmate: LEON, LUIS ALFONSO   44559-013

| | |
|---|---|
| Facility: SET SEATAC FDC | Proj. Rel. Date: UNKNOWN |
| Name: LEON, LUIS ALFONSO | Proj. Rel. Mthd: UNKNOWN |
| Register No.: **44559-013** | DNA Status: ENG05140 / 07-31-2019 |
| Age: 33 | |
| Date of Birth: | |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| *NO DETAINER* | |

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| *NO ASSIGNMENTS* | | | |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| SET | ESL HAS | ENGLISH PROFICIENT | 04-22-2022 |
| SET | GED HAS | COMPLETED GED OR HS DIPLOMA | 04-22-2022 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| SET CAD | C | AIDS AWARENESS | 04-21-2022 | 04-21-2022 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 04-13-2022 |
| SCRN2 | CCM: STABLE CHRONIC CARE | 03-21-2022 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start | |
|---|---|---|---|
| NO PAPER | NO PAPER MEDICAL RECORD | 08-05-2019 | Count 1 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 08-05-2019 | Paragraph 1.14 |
| YES F/S | CLEARED FOR FOOD SERVICE | 08-05-2019 | |

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| ED WAIT RC | DRUG EDUCATION WAIT-RQ COMOFF | 05-02-2022 |

## FRP Payment Plan

| Most Recent Payment Plan |
|---|
| ** NO FRP DETAILS ** |

## FRP Deposits

Trust Fund Deposits - Past 6 months:   $607.73      Payments commensurate ?   Y

New Payment Plan:   ** No data **

## Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 05-02-2022 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 04-22-2022 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 05-02-2022 |
| N-WORK Y | NEED - WORK YES | 04-22-2022 |

## Progress since last review

| Initial Team-No progress. |
|---|

TRULINCS  44559013 - LEON, LUIS ALFONSO - Unit: SET-E-A        Document to Support Facts

-------------------------------------------------------------------------------------------

FROM: 44559013
TO: Warden
SUBJECT: ***Request to Staff*** LEON, LUIS, Reg# 44559013, SET-E-A
DATE: 05/07/2022 08:30:49 PM

To: Warden CC Assistant Warden CC Acting Warden
Inmate Work Assignment: NA

When I first arrived on April 7th I had an issue with my diet. I did not eat for 6 days. Every officer I asked for help just neglected to help. Jone v Gallahan says that prison officials must provide a prisoner in isolation with a "diet containing a caloric requirement that will not be rejected on religious grounds." The court noted that this requirement may be met by providing acceptable food alternatives. This was not done for 6 days. Therefore prison officials violated my first amendment and also, the Religious Land Use and Institutionalized Persons Act (RLUIPA) was violated. Prison officials failed to show that policy was used in furtherance of a compelling governenmental interest, or the least restrictive means of furthering that interest. "No government shall impose a substantial burden on the religious exercise of a person residing or confined to an institution," It went on to say that "even if the burden results from a rule of general applicability.."

You can find this in Religion In Prison SubSection 7.4.6 Restriction of Diet

Your officers violated the law and although my diet was actually given to 6 days later they nonetheless violated it already. Mind you, officers acting under the color of law in your facility.

When I tried to send a letter out to the Department of Justice, Civil Rights Division in Washington, DC, one of your officers, J. Manansala read my letter. He, among others were mentioned in this letter. He did not just "scan" my letter I looked at his eyes and stayed with each letter for a good while. Long enough to see if name and other names. I seen that Smith the Counselor came in and I thought I could take refuge on him because I heard although he is a "hard ass" he is "fair." To my surprise the following occurred:

I greeted the counselor without knowing his name so I said sir. He replied as if to let me know I can continue with whatever I wanted to say. I then said I wanted to write a grievance. Mind you, the grievance was on J. Manansala, which was sitting right next to him. In order to avoid saying the grievance was on him I asked who can I email. Smith then said that I can't email, that instead I should write a hand written cop-out. Smith pressed the matter and said that who is the grievance on. Feeling the pressure I simply said "Him, J. Manansala." To which Smith replied, "You cant grieve on my officer." I explained that he read my legal mail and a back and forth about scanning occured but it lead up to something very surprising and frankly quite shocking. Smith said, "I'll just throw it away." I replied, "sir, I'm going to sue him and he was in the letter thats why I didn't want him to scan it." Smith said something along the lines of, "you're not going to sue anyone." I then quickly replied, "I already did. I sent out a letter to the DOJ, Civil Rights Division." Then Smith said, "no you didnt." Excuse me?! Smith said he throws grievances. This leads me to believe that he also threw away my letter to the Department of Justice. When an officer of the law "sworn to uphold the law and keep inmates safe" says that he throws out all grievances on "his officers", mind you, grieving is a constitutionally protected right, if he is willing to do that then he is also willing to throw away a letter that is going to be a lawsuit to one of "his officers." I asked for his name and he said "I dont have to give you my name" but the fact is that he does because he is working under the color of law and is therefore a public servant and his name is public information. How else can I grieve on him if I don't know his name? Being that grieving is a right and not something which is earned.

I already told my sister to tell my lawer and I will be printing this and sending this to my lawyer as well. I am exhausting all remedies with you sir. Should you choose not to help me in this criminal situation. Laws were broken and I am here serving time because I am being held responsible and I ask that you hold your prison officials responsible as well.

Count 1 1.27 [crossed out], Count 2 2.1-3, Count 3 [crossed out] 3.1 and 3.8

Paragraphs where this supporting Document
is most relvant.



SEATAC Federal Detention Center
Luis Alfonso Leon #44559-013 EA
P.O. Box 13900
Seattle, WA 98198

FILED
LODGED
RECEIVED

MAIL

JUN 1 6 2022

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

Seattle P&DC 981
TUE 14 JUN 2022

Clerk, U.S. District Court
700 Stewart Street, Suite 2310
Seattle, WA 98101-1271

Legal Mail