1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

7

8

9

10

LUIS ALFONSO LEON,

Plaintiff,

v.

ELLEDGE, et al.,

Defendants.

Case No.  2:22-cv-00851-JNW-TLF

REPORT AND
RECOMMENDATION

Noted for __**May 10, 2024**__

11      Plaintiff, Luis Alfonso Leon, a sentenced and convicted federal prisoner at the

12  time he filed the amended complaint, was in custody at the SeaTac Federal Detention

13  Center (FDC SeaTac) when he commenced this action.[1] Dkt. 22. He proceeds *pro se*

14  and *in forma pauperis*. Dkt. 10. Plaintiff asserts that he is bringing this action pursuant to

15  the Religious Freedom Restoration Act (RFRA) and pursuant to 42 U.S.C. § 1983 and

16  *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) -- alleging

17  violations of his First, Fourteenth and Eighth Amendment rights under the United States

18  Constitution. Dkt. 22. Plaintiff's amended complaint names the Federal Bureau of

19  Prisons (BOP) and several individual BOP employees as defendants. *Id*.

20

21

22

23

24

[1] Plaintiff was subsequently released from detention on October 10, 2023. Dkts. 49, 52.

25

REPORT AND RECOMMENDATION - 1

This matter is before the Court on defendant BOP's motion to dismiss.[2] Dkt. 45. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4. For the reasons set forth below, the undersigned recommends that the Court GRANT defendant's motion to dismiss (Dkt. 45) and dismiss plaintiff's claims against defendant BOP.

## FACTUAL BACKGROUND

Plaintiff's amended complaint names the following as defendants: BOP; Elledge, prison official; J. Manansala, prison official; Harris, prison official; Sheikh, Chaplain; Smith, counselor; and I. Jacquez, warden at FDC SeaTac. Dkt. 22 at 2-3.

Plaintiff alleges he is a Vaishnava Hindu and that he is required by his religion to eat a vegetarian and egg-free diet. *Id.* at 11-12. He alleges his rights were violated when he was denied twelve vegetarian and egg-free meals over the course of seven days while his religious diet request was pending and that he was also denied specialized prayer beads. *Id.* at 7.

Plaintiff alleges he informed prison official Elledge that he required a religious diet and Elledge informed him the Chaplain would have to approve the request and explained the process for submitting a request on a piece of paper labeled "cop out." *Id.* at 13-15. Plaintiff indicates he submitted the "cop out" form requesting a religious meal exemption on April 7, 2022. *Id.* He indicates Elledge informed him that he may not be able to reach the Chaplain until Monday. *Id.*

---

[2] The individual defendants employed by the BOP and named in this action have moved separately to dismiss (Dkt. 47) and that motion will be addressed in a separate report and recommendation.

REPORT AND RECOMMENDATION - 2

Plaintiff indicates he told Elledge he should not have to starve for days until his diet was approved but Elledge responded there was nothing he could do. Dkt. 22 at 13-15. Plaintiff asserts he told Elledge on several occasions that he could not eat the meals provided due to his religious beliefs and requested a food alternative like peanut butter -- but he was told he would not receive special treatment. *Id.* Plaintiff indicates he told Elledge he wanted to avoid filing a lawsuit and Elledge responded he was going to give him the opportunity to do so. *Id.*

Plaintiff alleges he suffered hunger, depression, low energy, nausea, diarrhea, pain and headaches due to lack of food. *Id.* He alleges he conveyed this to Elledge. *Id.* He indicates when he told Elledge he was unable to eat the food that contained meat Elledge told him he should stay out of prison and that he should "just eat it." *Id.*

Plaintiff alleges he also asked prison official J. Manansala for help and for a food alternative but that he told him there was nothing he could do. Dkt. 22 at 15-17. Plaintiff indicates he asked J. Manansala to speak to his superior but that no superior ever came. *Id.*

Plaintiff alleges he asked prison official Harris for help and that Harris laughed and responded "Oh! You're that inmate with high standards the door warrior" and told plaintiff he could not help. *Id.* at 17-18. Plaintiff indicates he asked Harris whether if plaintiff was a "door warrior" then Harris was a "tyrant" and Harris responded "yes." *Id.*

He alleges his religious meals request was approved by the Chaplain on April 10, 2022. *Id.* at 19-20. He states he spoke to the Chaplain on April 10, 2022, and the Chaplain told him his request had been approved but would have to wait a few more days before receiving the "no flesh" meal. *Id.*

Plaintiff indicates that on April 7, 2022, he received a "sack lunch" containing peanut butter, jelly, bread, an apple and water and that he rejected dinner on religious grounds. Dkt. 22 at 19-20. On April 8, 9, 10, 11, 12, he ate about a handful of brown cereal flakes and refused lunch and dinner on religious grounds as the meals contained flesh. *Id.* On April 13, 2022, he indicates he ate the cereal flakes, refused lunch on religious grounds, and received his first "no flesh" tray at dinner. *Id.* Plaintiff indicates during dinner he received his first vegetarian and egg-free meal on April 13, 2022. *Id.* at 7-8.

He alleges he did not drink the milks provided due to being lactose intolerant and avoided the breakfast pastry to avoid the risk of eating egg. *Id.* He estimates that even if he had eaten the entire breakfast tray, which he did not, he would only have consumed approximately 610 calories on the days he only ate breakfast. *Id.*

Plaintiff alleges as a result of being denied twelve meals that conform to his religious beliefs over seven days he suffered hunger, depression, anxiety, low energy, nausea, diarrhea, stomach pain, cramps, weakness, fatigue, vertigo, stress, constant headaches, thoughts of suicide, insomnia, and added to his post-traumatic stress disorder. Dkt. 22 at 25-26. He indicates he lost 20 pounds from April 7 to April 15. *Id.*

Plaintiff also alleges his religious diet had already been approved in a different facility and that FDC SeaTac was aware because a "team meeting" sheet reflects this. *Id.* at 7-8.

Plaintiff alleges that he sent out kites every day and that most of those kites were labelled as grievances on officers that did not help him with receiving no flesh diets. *Id.* at 20-21. He indicates he expressed in the grievances that he was starving and that

officers were violating his rights. *Id.* Plaintiff alleges on May 7, 2022, he asked counselor Smith how to file a proper grievance because he had not received any responses to the ones he had sent out. *Id.* He indicates counselor Smith told him – in the presence of J. Manansala -- that he (counselor Smith) was responsible for reading grievances and that he throws away all grievances against one of his officers. *Id.* Plaintiff indicates he believes his grievances must not have made it to their proper destination and this is why he was unable to contact his superiors before he got access to the computer. *Id.* Under these circumstances, plaintiff alleges exhausting administrative remedies was "illusory." *Id.*

Plaintiff indicates he also asked the Chaplain for prayer beads and that he first told plaintiff that his religion did not qualify for beads. *Id.* at 22. However, plaintiff indicates that in January 2023 the Chaplain said that the beads were allowed, that he could not provide them due to insufficient funds, but that the religious community could donate them to the Warden. *Id.*

Plaintiff indicates he sent warden Jacquez an email or two because he had not received any response from the handwritten "cop outs" he sent out and he expressed that the officers violated his rights. Dkt. 22 at 19. He indicates warden Jacquez did not seem concerned and responded that plaintiff's diet was already approved. *Id.*

Plaintiff alleges "since the defendants work at SEATAC FDC and this facility and its faculty receive federal funding, then the Federal Bureau of Prisons is also liable." *Id.* at 9. Plaintiff alleges "there is a problem with how these Federal employees are being trained, and this responsibility falls on the [BOP] because these individuals are acting under the color of law. *Id.* at 19-20.

1    Plaintiff alleges defendants violated his rights under RFRA, and the First,

2  Fourteenth and Eighth Amendments of the United States Constitution. Plaintiff asserts

3  his claims under the U.S. Constitution pursuant to 42 U.S.C. § 1983 and *Bivens*. Dkt.

4  22.

5    Plaintiff indicates he is suing "all proper defendants in their individual capacity for

6  damages … [and is] also suing [BOP] for injunctive relief." *Id.* at 23.

7    As relief he seeks: monetary damages, injunctive relief, a basic Vaishnava prayer

8  kit, a Bhagavad-gita, staff disciplined, fired or placed under arrest, transfer to an Arizona

9  federal detention facility, an official public apology, and the menu to be reviewed to

10  ensure proper nutrition and an egg-free breakfast. *Id.* at 29.

11                      <u>STANDARD OF REVIEW</u>

12    The Court's review of a motion to dismiss under Federal Rule of Civil Procedure

13  (FRCP) 12(b)(6) is limited to the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668,

14  688 (9th Cir. 2001). The Court held in *Ashcroft v. Iqbal,* 680 U.S. 662, 678 (2009):

15  "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

16  its face" must be contained in the complaint in order to survive a motion to dismiss

17  under FRCP 12(b)(6). A pro se complaint must be liberally construed. *Mangiaracina v.*

18  *Penzone,* 849 F.3d 1191, 1195 (9th Cir. 2017). All material factual allegations in the

19  complaint "are taken as admitted," and the complaint is to be liberally "construed in the

20  light most favorable" to the plaintiff. *Id.*; *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

21    To sustain a civil rights cause of action under 42 U.S.C. § 1983, a plaintiff must

22  show (a) that he suffered a violation of rights protected by the Constitution or created by

23  a federal statute, and (b) that the violation was proximately caused by a person acting

24  under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

25

Section 1983 applies only to claims against state actors and therefore does not provide a cause of action against federal officials.

A damages action against a federal official for constitutional violations must be brought under *Bivens*, 403 U.S. 388. *Bivens* actions are the judicially crafted counterparts to § 1983 and are identical except for the replacement of a state actor with a federal actor. *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991). Accordingly, to sustain a *Bivens* action, a plaintiff must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of federal law. *See Crumpton*, 947 F.2d at 1420. To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

The Religious Freedom Restoration Act (RFRA) provides that the government "shall not substantially burden a person's exercise of religion" unless the government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000bb-1(a)-(b). To state a claim under RFRA, a plaintiff must allege facts sufficient to show that the government's action "would (1) substantially burden (2) a sincere (3) religious exercise." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006).

## DISCUSSION

In its motion to dismiss, defendant BOP argues plaintiff's claims for money damages must be dismissed because he has no viable claim against defendant that would allow him to recover money damages. Dkt. 45. Defendant also argues plaintiff's

1  claims for injunctive relief are moot and should be dismissed because plaintiff has been

2  released from federal detention. *Id.*

3  **A.    Claims for Damages**

4      "Absent a waiver, sovereign immunity shields the Federal Government and its

5  agencies from suit." *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1993). The

6  United States has not waived sovereign immunity as to constitutional claims for

7  damages. *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991); *Thomas-Lazear v.*

8  *Federal Bureau of Investigation*, 851 F.2d 1202, 1207 (9th Cir. 1988). Likewise, "RFRA

9  does not waive the federal government's sovereign immunity from damages."

10 *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 840 (9th Cir.

11 2012). Finally, 42 U.S.C. § 1983 also "do[es] not waive sovereign immunity to allow a

12 suit against a federal agency." *Vela v. Federal Bureau of Prisons*, No. EDCV1902506,

13 2021 WL 4483407 (citing *Jachetta v. United States*, 653 F.3d 898, 908 (9th Cir. 2011)

14 (no evidence Congress intended to subject federal agencies to § 1983 liability)).

15 Moreover, 42 U.S.C § 1983, by its terms, applies to individuals acting "under color of

16 state law" and not under color of federal law. *Gottschalk v. City & Cnty. of San*

17 *Francisco*, 964 F. Supp. 2d 1147, 1162–63 (N.D. Cal. 2013). Thus, the doctrine of

18 sovereign immunity bars constitutional claims for damages brought under *Bivens* and

19 42 U.S.C. § 1983, as well as claims for damages under RFRA, against the United

20 States and its agencies. *See Hodge v. Dalton*, 107 F.3d 705, 707 (9th Cir. 1997) ("The

21 doctrine of sovereign immunity applies to federal agencies and to federal employees

22 acting within their official capacities.").

23

24

25

1    Accordingly, to the extent plaintiff's amended complaint can be construed to bring

2  claims for damages under *Bivens*, RFRA, and 42 U.S.C. § 1983 against defendant

3  BOP, those claims are barred by sovereign immunity and should be dismissed.[3]

4  **B.    Claims for Injunctive Relief**

5    A case is moot "when it has 'lost its character as a present, live controversy of

6  the kind that must exist if [the court is] to avoid advisory opinions on abstract

7  propositions of law.'" *Oregon v. FERC,* 636 F.3d 1203, 1206 (9th Cir. 2011) (per curiam)

8  (quoting *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969) (per

9  curiam)). Because "[t]he jurisdiction of federal courts depends on the existence of a

10  'case or controversy' under Article III of the Constitution," we must dismiss a case that

11  has become moot. *Pub. Util. Comm'n of Cal. v. FERC,* 100 F.3d 1451, 1458 (9th Cir.

12  1996) (quoting *GTE Cal., Inc. v. FCC,* 39 F.3d 940, 945 (9th Cir. 1994)).

13    "An inmate's release from prison while his claims are pending generally will moot

14  any claims for injunctive relief relating to the prison's policies unless the suit has been

15  certified as a class action." *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Nelson v.*

16  *Heiss*, 271 F.3d 891, 897 (9th Cir. 2001) ("[W]hen a prisoner is moved from a prison, his

17  action will usually become moot as to conditions at that particular facility."). "The reason

18  is that the released inmate is no longer subject to the prison conditions or policies he

19  challenges." *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012). "The same is true for

20  claims seeking declaratory relief." *Id*. There is an exception to the mootness doctrine for

21

22

23  ---

[3] The Court notes that defendant also argues that to the extent plaintiff attempts to bring a claim against BOP under the Federal Tort Claims Act (FTCA) that claim should be dismissed. But plaintiff's amended complaint does not include any mention of the FTCA and the Court declines to construe plaintiff's complaint to raise a claim that has not been pled.

24

25

REPORT AND RECOMMENDATION - 9

1  claims that are capable of repetition, yet evade review, but this "is limited to

2  extraordinary cases in which (1) the duration of the challenged action is too short to be

3  fully litigated before it ceases, and (2) there is a reasonable expectation that the plaintiff

4  will be subjected to the same action again." *Id.* (internal citation and quotation marks

5  omitted).

6       Here, plaintiff has been released from detention and is therefore no longer

7  subject to the policy or conditions he challenges. Furthermore, there is no indication

8  plaintiff will be returned to federal detention in the future and, thus, again be subjected

9  to the challenged policies and conditions. Accordingly, the Court finds plaintiff's

10  requests for injunctive relief are moot and defendant's motion (Dkt. 45) should be

11  granted, and those claims should be dismissed without prejudice.[4]

12

13

14

15  _____

16  [4] The Court notes that to the extent plaintiff seeks relief in the form of an official public apology and for staff to be disciplined, fired or placed under arrest, even if these requests for relief would

17  not otherwise be considered moot, he fails to demonstrate such relief would be appropriate in this case. *See* Prison Litigation Reform Act (PLRA) 18 U.S.C.A. § 3626 ("Prospective relief in

18  any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not

19  grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least

20  intrusive means necessary to correct the violation of the Federal right."); *Williams v. Ferguson*,

21  No. S-04-0998 LKK PANP, 2006 WL 2482416, at *1 (E.D. Cal. Aug. 28, 2006), *report and*

22  *recommendation adopted*, No. CIVS040998LKKEFBP, 2006 WL 2792849 (E.D. Cal. Sept. 28, 2006) ("Neither a court-ordered apology from defendants, nor required investigation into claims

23  of other inmates, is appropriate relief for plaintiff in this § 1983 action.").

24

25

REPORT AND RECOMMENDATION - 10

CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court GRANT defendant's motion to dismiss (Dkt. 45). The Court should dismiss plaintiff's claims for damages against defendant BOP as barred by sovereign immunity and should dismiss plaintiff's claims for injunctive relief against defendant BOP without prejudice as moot. As no claims remain against defendant BOP, it should be terminated from the action. A proposed order is attached.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on **May 10, 2024**, as noted in the caption.

Dated this 15th day of April, 2024.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11